MH:JL
F.#2007R00730

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

KEVIN MCMAHON,

    Defendant.

- - - - - - - - - - - - - - - - -X

I N F O R M A T I O N

Cr. No. 07-164 (JBW)
(T. 18, U.S.C., §§ 1962(d),
1963 and 3551 et seq.)

THE UNITED STATES ATTORNEY CHARGES:

INTRODUCTION

    At all times relevant to this Information, unless otherwise indicated:

The Enterprise

    1.    The members and associates of the Gambino organized crime family of La Cosa Nostra (the "Gambino family") constituted an "enterprise," as defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact. The Gambino family constituted an ongoing organization, whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. The Gambino family engaged in, and its activities affected, interstate and foreign commerce. The Gambino family was an organized criminal group that operated in the Eastern District of New York and other parts of the United States.

COURT EXHIBIT
cR08-164
1

2. The Gambino family operated through groups of individuals headed by "captains," who were also referred to as "skippers," "caporegimes" and "capodecinas." These groups, which were referred to as "crews," "regimes" and "decinas," consisted of "made" members of the Gambino family, also referred to as "soldiers," "friends of ours," "good fellows" and "buttons," as well as associates of the Gambino family.

3. Each captain was responsible for supervising the criminal activities of his crew and providing crew members and associates with support and protection. In return, the captain received a share of the earnings of each of the crew's members and associates.

4. Above the captains were the three highest-ranking members of the Gambino family. The head of the Gambino family was known as the "boss." He was assisted by an "underboss" and a counselor, who was known as the "consigliere." With the assistance of the underboss and consigliere, the boss was responsible for setting policy, resolving disputes between members and associates of the Gambino family and members and associates of other criminal organizations, and approving all significant actions taken by members and associates of the Gambino family, including murder.

5. The boss, underboss and consigliere of the Gambino family, who were sometimes referred to collectively as the "administration," supervised, supported, protected and

disciplined the captains, soldiers and associates and regularly received reports regarding the activities of the members and associates of the Gambino family. In return for their supervision and protection, the boss, underboss and consigliere received part of the illegal earnings of each crew. When a member of the administration was unable to fulfill his criminal responsibilities because of incarceration, ill health or other reason, a member of the Gambino family was often appointed to that position in an acting capacity.

6. The Gambino family was part of a nationwide criminal organization known by various names, including the "mafia" and "La Cosa Nostra," which operated through entities known as "families." The ruling body of this nationwide organization was known as the "commission," the membership of which at various times has included the bosses of the five New York City-based families, to wit: the Bonanno, Colombo, Gambino, Genovese and Luchese organized crime families.

7. From time to time, the Gambino family would propose a list of associates to be "made," that is, to become members of the Gambino family. The list would be circulated to the other families based in New York City.

The Purposes, Methods and Means of the Enterprise

8. The principal purpose of the Gambino family was to generate money for its members and associates. This purpose was implemented by members and associates of the Gambino family

through various criminal activities, including arson, credit card fraud, drug trafficking, extortion, kidnaping, illegal gambling, interstate transportation of stolen goods, loansharking and robbery. The members and associates of the Gambino family also furthered the enterprise's criminal activities by threatening economic injury and using and threatening to use physical violence, including murder.

9. Although the primary purpose of the Gambino family was to generate money for its members and associates, the members and associates at times used the resources of the Gambino family to settle personal grievances and vendettas, sometimes with the approval of higher-ranking members of the Gambino family. For those purposes, members and associates of the enterprise were asked and expected to carry out, among other crimes, acts of violence, including murder and assault.

10. The members and associates of the Gambino family engaged in conduct designed to prevent government detection of their identities, their illegal activities and the location of proceeds of those activities. That conduct included a commitment to murdering persons, particularly members or associates of organized crime families, who were perceived as potential witnesses against members and associates of the enterprise.

11. Members and associates of the Gambino family often coordinated street-level criminal activity, such as

extortion and fraud, with members and associates of other organized crime families.

The Defendant

12. At various times relevant to this Information, the defendant KEVIN MCMAHON was an associate within the Gambino family.

RACKETEERING CONSPIRACY

13. The allegations contained in paragraphs 1 through 12 are realleged and incorporated as if fully set forth in this paragraph.

14. On or about and between January 1, 1983 and December 31, 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant KEVIN MCMAHON together with others, being a person employed by and associated with the Gambino family, an enterprise that engaged in, and the activities of which affected, interstate commerce, knowingly and intentionally conspired to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5). The defendant agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise.

15. The pattern of racketeering activity through

which the defendant KEVIN MCMAHON agreed to conduct the affairs of the enterprise consisted of the racketeering acts set forth below as Racketeering Acts One through Six.

### RACKETEERING ACT ONE
(Jury Tampering)

16. On or about and between April 27, 1987 and January 22, 1988, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant KEVIN MCMAHON, together with others, did knowingly, intentionally and corruptly endeavor to influence, intimidate and impede petit jurors in the discharge of their duties in connection with the trial of United States v. John Carneglia, et al., No. 83 CR 412 (MAC) (E.D.N.Y.), in violation of Title 18, United States Code, Sections 1503 and 2.

### RACKETEERING ACT TWO
(Jury Tampering)

17. On or about and between May 9, 1988 and July 27, 1988, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant KEVIN MCMAHON, together with others, did knowingly, intentionally and corruptly endeavor to influence, intimidate and impede petit jurors in the discharge of their duties in connection with the trial of United States v. John Carneglia, et al., No. 83 CR 412 (JMM) (E.D.N.Y.), in violation of Title 18, United States Code, Sections 1503 and 2.

## RACKETEERING ACT THREE
(Jury Tampering)

18. On or about and between April 17, 1989 and May 23, 1989, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant KEVIN MCMAHON, together with others, did knowingly, intentionally and corruptly endeavor to influence, intimidate and impede petit jurors in the discharge of their duties in connection with the trial of United States v. John Carneglia, et al., No. 83 CR 412 (JRB) (E.D.N.Y.), in violation of Title 18, United States Code, Sections 1503 and 2.

## RACKETEERING ACT FOUR
(Jury Tampering)

19. On or about and between January 8, 1990 and February 7, 1990, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant KEVIN MCMAHON, together with others, did knowingly, intentionally and corruptly endeavor to influence, intimidate and impede petit jurors in the discharge of their duties in connection with the trial of United States v. Edward Lino, et al., No. 83 CR 412 (JMM) (E.D.N.Y.), in violation of Title 18, United States Code, Sections 1503 and 2.

## RACKETEERING ACT FIVE
(Felony Murder of Louis DiBono)

20. On or about October 4, 1990, within the Southern District of New York and elsewhere, the defendant KEVIN

MCMAHON, together with others, knowingly and intentionally committed the kidnapping of Louis DiBono in Manhattan, New York and, in the course of and in furtherance of such crime, another participant in the kidnapping caused the death of Louis DiBono, in violation of New York Penal Law Sections 125.25(3) and 20.00.

### RACKETEERING ACT SIX
(Felony Murder of Jose Delgado Rivera)

21. On or about December 14, 1990, within the Eastern District of New York and elsewhere, the defendant KEVIN MCMAHON, together with others, knowingly and intentionally committed the robbery of employees of an armored car company in Queens, New York and, in the course of and in furtherance of such crime, another participant in the robbery caused the death of Jose Delgado Rivera, in violation of New York Penal Law Sections 125.25(3) and 20.00.

(Title 18, United States Code, Sections 1962(d), 1963 and 3551 et seq.)

BENTON J. CAMPBELL
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

BY: /s/ Paul Schoeman
ACTING UNITED STATES ATTORNEY
PURSUANT TO 28 C.F.R. 0.136

_____ Criminal _____ Action _____ No. _____

# UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

THE UNITED STATES OF AMERICA

vs.

KEVIN MCMAHON,

Defendant.

# INFORMATION

BENTON J. CAMPBELL
United States Attorney
271 Cadman Plaza East
Brooklyn, New York 11201
Mailing Address:
271 Cadman Plaza East
Brooklyn, New York 11201

Due Service of a copy of the within _____ is hereby admitted.

Dated: _____, 2006

Attorney for _____

Joey Lipton
Assistant U.S. Attorney
(718) 254-6125

---

SIR:

PLEASE TAKE NOTICE that the within will be presented for settlement and signature to the Clerk of the United States District Court in his office at the U.S. Courthouse, **271 Cadman Plaza East Brooklyn, New York**

Dated: Brooklyn, New York
_____, 2006

United States Attorney,
Attorney for _____

To: _____

Attorney for _____

---

SIR:

PLEASE TAKE NOTICE that the within is a true copy of _____ Duly entered herein on the _____ day of _____, in the office of the Clerk of the Eastern District of New York,

Dated: Brooklyn, New York _____, 2006

United States Attorney,
Attorney for _____

To: _____

Attorney for _____